IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| JEFFREY W. HILDEMAN, SR., | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-0507-N-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner | ) | |
| for the Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently before the Court for its consideration is the Petitioner's request for judicial review of the Respondent's denial of social security disability benefits. (Dkt #1)  Petitioner brought this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g). The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record, ("AR").  For the reasons set forth below, the Petition for Review will be denied.

**Memorandum Decision and Order - Page 1**

# I.
# Background.

## A.     Administrative Proceedings.

Petitioner Jerry Hildeman filed applications for a period of disability, disability insurance benefits, and supplemental security income on January 8, 2001. (AR 14.)  He alleged disability since December 31, 1998.  (AR 328.)  The applications were denied initially on June 12, 2001 (AR 28.) and upon reconsideration on September 11, 2001.  (AR 29.)   After a timely request for a hearing was filed, Petitioner, represented by counselor Mark Jones appeared and testified before Administrative Law Judge (ALJ) Payne on July 31, 2002. (AR 326-384.)  An unfavorable Administrative Law Judge decision was issued on October 8, 2002. (AR 14.)  By Order dated May 2, 2003, the Appeals Council remanded this case for further development of the record and for supplemental evidence from a vocational expert. (AR 244-247.)  Petitioner appeared and testified at a supplemental hearing held on April 14, 2004.  (AR 385-413.)  Also appearing and testifying was Dr. Allen Bostwick, a medical expert in psychology.  *Id.*  A second supplemental hearing was held on May 19, 2004 in Spokane, Washington where the Petitioner and Ms. Sharon Welter, a vocational expert, appeared and testified.  (AR 414-428.)

ALJ Payne considered the testimony and all other evidence of record, and on June 16, 2004, issued a decision finding Petitioner not disabled within the meaning of the Act, and was therefore not entitled to disability insurance benefits or supplemental security income.  (AR 14-24.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on August 25, 2004.  (AR 7-9.)  20 C.F.R. §§ 404.981, 416.1481

(1991).  Petitioner has exhausted all administrative remedies and is therefore seeking judicial

review pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**B.      Statement of Facts.**

At the time of the hearing before the ALJ, Petitioner was fifty-two (52) years old.

Petitioner testified he had graduated from high school and taken some college classes.  (AR 15.)

Petitioner's prior work experience consists of mechanic, carpenter, R.V. park manager and

security officer.  (AR 90-97.)  Petitioner alleged disability since December 31, 1998 due to

anxiety, low back pain, vision problems and ulcers.   (AR 15.)

Since December 2000, Petitioner has been treated and/or evaluated by various medical

professionals.  He has a history of abdominal pain and gastritis type symptoms.  Petitioner was

hospitalized on December 12, 2000 complaining of a constant abdominal pain.  Petitioner

specifically complained of a tingling in his left arm, pain in the left side of his chest, and

becoming flushed and sweaty.  Petitioner's EKG indicated a flipped T-wave V3 that was not

inverted before and  he was admitted for telemetry monitoring to rule out myocardial infarction.

Petitioner's blood pressure was elevated to 230/90 and he appeared very anxious.  Monitoring of

Petitioner revealed no cardiac irregularity.  However, Petitioner did suffer from epigastric

tenderness.  Ultimately, Petitioner was discharged with a presumptive diagnosis of helicobater

pylori ulcer disease causing slow blood loss with profound microcytic anemia.  (AR 114.)

After his visit to the hospital, the medical records reveal that Petitioner began seeing W.

Hugh Leedy, M.D. between December 27, 2000 to April 30, 2002 to treat Petitioner's

hypertension, chronic anxiety, peptic ulcer disease, anemia, and chronic degenerative disc

disease.  Petitioner came in with repeated complaints of abdominal pain and loose stools.  In

**Memorandum Decision and Order - Page 3**

addition, Petitioner's blood pressure continued to be very high, especially while Petitioner was in the doctor's office.  The Petitioner had been involved in an earlier motor vehicle accident in 1997 or 1998 in which he hit his left knee.  Since that time Petitioner has experienced left hip and low back pain. Occasionally, Petitioner wears a back brace for his lower back pain. Another prevailing theme of Petitioner's medical records is his chronic anxiety, which seem to result in Petitioner's constant, pressured speech.  Dr. Leedy prescribed various medications with varying results.  Often Petitioner reported improvements, but often Petitioner complained of various adverse side effects of the medications such as headaches, fatigue, and nausea.  However, through his treatment, Petitioner did report that his "nerves were getting better" and that his tolerance for exercise had increased.  Furthermore, Petitioner reported on January 19, 2002 that he had been going to the courthouse to sit on trials to learn about the various "players" in the county and to get acquainted with some of the attorneys in an attempt to pursue work as a private investigator.  On March 19, 2002, Petitioner also conveyed his plan to become a county deputy sheriff reserve officer.  (AR 195-200.)

Dr. Leedy completed a Physical Residual Capacity Questionnaire on July 2, 2002. According to Dr. Leedy's assessment of Petitioner's condition, Petitioner could only sit for 20 minutes at a time and only 2 hours in an 8-hour work day; he could stand for only 20 minutes at a time and stand and walk 4 hours in an 8-hour work day.  Dr. Leedy opined that Petitioner would need to include periods of walking around every 20 minutes during an 8-hour day and would require the ability to shift positions at will from sitting, standing, or walking.  Dr. Leedy further indicated that Petitioner could frequently lift up to 20 pounds and occasionally lift 50

pounds.  Petitioner could twist and stoop occasionally but rarely do any crouching.  Dr. Leedy

opined that Petitioner would likely be absent more than 4 days per month.

Petitioner was referred to Roy J. Philips Ph.D for a psychological consultative

examination which occurred on May 4, 2001.  Dr. Philips diagnosed Petitioner with a

generalized anxiety disorder, pain disorder per medical report and past history, and a

somatization disorder with a global assessment of 35.[1]  The ALJ noted that Dr. Philips based his

assessment only on a mental status examination and review of doctor reports. (AR 133-137.)

Petitioner was again admitted to the hospital with complaints of chest pain and to rule out

myocardial infarction on June 1, 2001.  After monitoring of Petitioner revealed no cardiac

irregularity suggesting a myocardial infarction, Petitioner was discharged with a diagnosis of

chest pain likely secondary to anxiety and dyspepsia.

Petitioner was then referred to J. Craig Stevens, M.D. on June 5, 2001 for a consultative

examination due to his complaints of low back pain, numbness and tingling on the anterior

aspects of his thighs, left greater than right.  Petitioner reported that he had undergone some

physical therapy for back but had never received other treatment.  Petitioner also reported that he

was independent in all self-care activities and was able to drive.  After examining Petitioner, Dr.

Stevens opined that Petitioner had functional low back pain, possible L4-L5 disk degeneration,

hypertension (anxiety at the time of the evaluation had most likely elevated him from his normal

readings), recurrent episodes of severe anxiety, recurrent panic attacks, and bilateral meralgia

paresthetica, greater on the left.  Based on the physical findings and Petitioner's subjective

---

[1]      Petitioner also was examined by Carl T. Renfro, Ph.D. on September 15, 2003.  At
that time, Dr. Renfro reported a GAF of 60-65.

**Memorandum Decision and Order - Page 5**

symptoms, Dr. Stevens indicated that Petitioner would be restricted to lifting no more than 30 pounds with an inability from engaging in repetitive lumbar flexion.  Otherwise, Dr. Stevens indicated that Petitioner remained significantly functional and employable.  (AR 151-154.)

After Petitioner underwent a consultative examination by Dr. Michael Carraher on September 9, 2003, who diagnosed Petitioner with a history of anemia, with macrocytic indices, chronic anxiety disorder, complaints of low back pain, with minimal findings on the x-ray, a history of peptic ulcer disease, symptoms of indigestion, treated with medications and recommended a psychological evaluation because of Petitioner's apparent anxiousness. (AR 286-288.)

Petitioner was referred to Carl Renfro, Ph.D.,  for a consultative psychological evaluation which occurred on September 15, 2003.  Based on his examination of Petitioner and a review of Petitioner's medical records, Dr. Renfro diagnosed Petitioner with a mood disorder as a result of a general medical condition with features of agitation and affective liability.  Dr. Renfro also diagnosed Petitioner with a benzodiazepine dependence.  Dr. Renfro estimated Petitioner's global assessment functioning to be 60 to 65 (mild to moderate symptoms).  (AR 296-304.)

In his summary, Dr. Renfro reported that Petitioner's clinical presentation was positive for a heightened level of affective irritability, intolerance to frustration, and negative reaction to pressure or challenge.  Because Petitioner denied any focal anticipatory anxiety or concern, Dr. Renfro opined Petitioner's presentation was not consistent with a diagnosis of a generalized anxiety disorder.  Nor did the quality and range of Petitioner's somatic complaints amount to the requirements of a diagnosis of a somatoform disorder according to Dr. Renfro.  *Id.*

**Memorandum Decision and Order - Page 6**

Dr. Renfro noted Petitioner experienced significant disruption in areas of attention and concentration.  In addition, Petitioner seemed to have little tolerance for being challenged or engaging in tasks beyond his level of comfort.  Dr. Renfro further noted that Petitioner's "subjective performance" and "anecdotal history of selective learning style" suggested the possibility of some level of a underlying learning disorder.  However, Petitioner's ability to learn information relating to photography and biblical scholarship, as well as his ability to convey his knowledge to others, suggested Petitioner could acquire certain types of information in accordance with his own learning style.  However, during the evaluation, Petitioner appeared to be "markedly challenged when asked to address information in a manner with which he [was] unfamiliar and perhaps poorly equipped."  Despite Petitioner's apparent weaknesses, Dr. Renfro ultimately indicated that Petitioner "could be considered reasonably cognitively intact and capable of engaging in a daily array of effective decision making and problem solving activities." (AR 303.)

Dr. Renfro completed a mental work capacity evaluation, finding Petitioner only slightly limited in his ability to understand and remember detailed instructions.  Dr. Renfro did not find any other significant limitations on Petitioner's ability to understand and remember.  As to Petitioner's abilities relating to sustained concentration and persistence, Dr. Renfro found Petitioner slightly limited in his ability to carry out detailed instructions and in his ability to perform activities within a schedule, maintain regular attendance, and to be punctual.  Dr. Renfro also found slight limitations on Petitioner's ability to interact with the public, to ask simply questions or request assistance, to get along with co-workers without exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or

make plans independently of others.  Dr. Renfro found Petitioner moderately limited in his

ability to accept instructions and respond appropriately to criticism from supervisors.  (AR 305-

306.)

Finally, at the hearing, a medical expert in psychology, Dr. Allen Bostwick, appeared and

testified as to Petitioner's condition.  Upon reviewing the evidence in the medical record, Dr.

Bostwick opined Petitioner had an anxiety-related disorder as set forth in section 12/06 of the

Listings.  Under the "A" criteria of this section, Dr. Bostwick testified the presence of this

disorder was established by Petitioner's generalized persistent anxiety accompanied by motor

tension, autonomic hyperactivity, and apprehensive expectation.  Dr. Bostwick further testified

that the anxiety disorder could be controlled by Xanax and that there was really no evidence of

restrictions on daily activities, nor in social functioning.  Dr. Bostwick characterized the

restrictions as mild.  Dr. Bostwick also characterized Petitioner's difficulties in maintaining

concentration, persistence, or pace based on the anxiety disorder as mild.  Dr. Bostwick

ultimately found Petitioner's condition non-severe.  (AR 388-392.)

## II.
## Findings of the Administrative Law Judge.

In the decision issued following the hearing (AR 23), the ALJ made specific findings as

follows:

    1.    The claimant meets the nondisability  requirements for a period of
disability and Disability Insurance Benefits set forth in Section
216(I) of the Social Security Act and is insured for benefits
through March 31, 2003.

    2.    The claimant has not engaged in substantial gainful activity since the alleged
onset of disability.

3.      The claimant's [sic] has impairments which are considered "severe" based on the requirements in the Regulations 20 C.F.R. § § 404.1520(c) and 416.920(b).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The claimant has the residual functional capacity to perform work activities at the medium level of exertion.

7.      All of the claimant's past relevant work did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. § § 404.1565 and 416.965).

8.      The claimant's medically determinable severe impairments do not prevent the claimant from performing his past relevant work.

9.      The claim was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § § 404.1520(f) and 416.920(f)).

## III.
## Standard of Review.

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C.     § 423(d)(2)(A).

**Memorandum Decision and Order - Page 9**

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); and *Flaten v. Secy of HHS,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v.*

**Memorandum Decision and Order - Page 10**

*Sullivan*, 903 F.2d 1229 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits.  20 C.F.R. §§ 404.1520, 416.920 (1996)*; Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  First, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If the claimant is engaged in such activity, disability benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ determined that the Petitioner was not involved in any substantial gainful activity.  (AR 23.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.   While the ALJ found that Petitioner did not suffer from a severe medically determinable mental impairment, the ALJ did find that Petitioner's  impairments of hypertension, anemia, mild degenerative disc disease of the lumbar spine, peptic ulcer disease, and hip pain did significantly limit his ability to engage in basic work activities and therefore did constitute a severe impairment.  (AR 20.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. §§ 404.1520(d); 416.920(e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   The ALJ here determined that Petitioner did not possess the findings upon examination which are required in order for disability to be predicated on medical considerations alone, and that Petitioner's impairments did not meet or equal, with singly or in combination, the severity of any of listings in Appendix I, Subpart P, Regulations No. 4.  (AR 20.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. 20 C.F.R. §§ 404.1520(f), 416.920(f).  In the instant case, the ALJ determined from the evidence that the Petitioner did retain the residual functional capacity for medium work.

**Memorandum Decision and Order - Page 12**

Specifically, the ALJ found that Petitioner could perform his past relevant work as a manager (RV park), security guard, and groundskeeper. In addition, the ALJ found that Petitioner could perform other medium exertion jobs such as a kitchen helper, hand packager, fast food worker, recreational aide, and housekeeper.   On the basis of this review, the ALJ determined that Petitioner was not disabled within the meaning of the Act.

## IV.
## Issues Raised.

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ erred in the following respects:

1)   The ALJ erred in failing to consider the effect of Petitioner's mental impairment on his RFC.
2)   The ALJ erred in ignoring, without explanation, the opinions and findings of Petitioner's treating physician as to his mental functional limitations.
3)   The ALJ failed to disclose a complete hypothetical to the vocational expert that reflected all Petitioner's mental impairments.

The Court will take each argument in order.

## V.
## Discussion

### A.  Petitioner's mental impairment.

Petitioner argues that the ALJ should have considered the effect of Petitioner's mental impairments on his Residual Functional Capacity (RFC).  In support of this argument, Petitioner points to the report of Dr. Phillips, a designated Idaho Disability Determination Services

("DDS") examiner, which indicated Petitioner had a "generalized anxiety disorder" with a current GAF of 35.  Petitioner also refers to several statements made by Dr. Renfro, another DDS examining psychologist, who described Petitioner has having little tolerance for challenging tasks beyond his level of comfort, being markedly challenged to address information in an manner which he is unfamiliar and poorly equipped.  With respect to Dr. Renfro's examination, Petitioner also argues the ALJ should have considered Dr. Renfro's work capacity evaluation, which indicated Petitioner would be moderately affected in his ability to maintain attention and concentration for extended periods and in his ability to accept instructions and respond appropriately to criticism from supervisors.

Finally, Petitioner points to the opinion of Petitioner's treating physician, Dr. Leedy, who indicated that the petitioner would frequently experience pain or other symptoms severe enough to interfere with attention and concentration, that Petitioner would miss four days per month of work as a result of his condition and that Petitioner required low stress work activity.

It is the responsibility of the ALJ to determine residual functional capacity.  20 C.F.R. 404.1546.  In making this determination, the ALJ assesses all relevant evidence about a claimant's symptoms.  20 C.F.R.  404.1545.  In this case, the ALJ reasonably relied upon the medical expert testimony by Allen Bostwick, Ph.D as well as the opinion of Dr. Renfro in evaluating Petitioner's alleged mental impairments, rather than the opinion of his treating physician, Dr. Leedy.

Upon a review of the record, Dr. Bostwick determined Petitioner suffered from an anxiety related disorder evidenced by persistent anxiety and other signs.  While Dr. Bostwick acknowledged Petitioner suffered from an anxiety related disorder, he found that the disorder

only resulted in mild deficiencies in activities of daily living, no deficiencies in social functional

functioning, mild deficiencies of concentration, persistence, or pace, and no episodes of

decompensation.  Because of the mild nature of Petitioner's symptoms, the medical expert

concluded Petitioner's mental impairments were non-severe.

Dr. Bostwick's opinion was consistent with Dr. Renfro's opinion, who also determined

Petitioner would have a work capacity comprising only slight to moderate mental limitations in

the ability to maintain attention and concentration for extended periods and to accept instructions

and respond appropriately to criticism from supervisors.  Furthermore, counsel for Petitioner was

given the opportunity to cross-examine Dr. Bostwick about Dr. Renfro's opinion at the April 14,

2004 hearing.  Counsel questioned Dr. Bostwick as to the specific statements included in Dr.

Renfro's report referencing Petitioner's cognitive difficulties and difficulties dealing with

pressure.  Dr. Bostwick explained these statements were made in the context of Petitioner's

interaction with Dr. Renfro during Petitioner's psychological testing.  During the testing,

Petitioner was agitated because he described himself as a "hands-on learner" and he was

uncomfortable with pencil and paper types of tasks.  In addition, Petitioner could have been

further agitated by the fact that he was babysitting his grandson, who was with him at the time of

the testing.  Dr. Bostwick also noted that Dr. Bostwick found that Dr. Renfro did not give a

mental health diagnosis, but rather described a mood disorder due to a general medical condition

that is not a mental illness.

As the medical expert supported his testimony with specific clinical findings of record

and provided clear and specific bases for discounting other statements or opinions, Dr.

Bostwick's opinion constituted substantial evidence.  *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

**Memorandum Decision and Order - Page 15**

1995).  Accordingly, the Court finds that the ALJ's and the Appeals Council's decision in this regard is supported by substantial evidence and that the decisions should not be reversed.

**B. Treating Physician**

In addition, Petitioner maintains the ALJ ignored, without explanation, the opinions and findings of Petitioner's treating physicians as to his functional limitations.

The ALJ rejected Dr. Leedy's opinion as to Petitioner's Physical Residual Functional Capacity because Dr. Leedy appeared to rely primarily on Petitioner's subjective complaints of pain, which the ALJ found incredible, rather than objective medical findings.  An ALJ may reject a treating opinion based on medical expert testimony and the incredibility of claimant's subjective complaints when an ALJ has given clear and convincing reasons to reject the claimant's subjective claims..  *See Morgan v. Commissioner of SSA*, 169 F.3d 595, 600-602 (9th Cir. 1999).

The ALJ provided clear and convincing reasons to reject Petitioner's allegations that he could not work.  First, the ALJ noted Petitioner's complaints contradicted the records of his examining and consulting physicians.  The ALJ further noted that Petitioner only occasionally takes Tylenol for pain relief, which would indicate that his pain was not as severe as he reported. The ALJ also observed Petitioner during the hearing and Petitioner did not appear to be in pain despite describing his pain level as a six.  As the ALJ acknowledged that a short hearing is not a conclusive indicator of Petitioner's level of pain on a day-to-day basis, the ALJ only gave Petitioner's apparent lack of discomfort at the hearing a slight weight.  However, the ALJ further noted that Petitioner's activities were not as limited as one would expect based on Petitioner's complaints of disabling symptoms and limitations.  Petitioner cares for his 5-year old grandson,

**Memorandum Decision and Order - Page 16**

helps with the housework on a limited basis, such as vacuuming and doing dishes.  Petitioner also reported to his treating physician that he had been going to the courthouse to watch hearings, was distributing his card to attorneys to solicit work as a private investigator, was able to sit at a computer to do investigative work, was making plans to become a county deputy sheriff reserve officer, was doing private security patrols each night, was doing some painting, and he helped his daughter move.  Because Petitioner provided clear and convincing reasons for rejecting Petitioner's testimony, the ALJ had a proper basis for rejecting Dr. Leedy's testimony.

The Court finds that the ALJ set forth a number of specific reasons for rejecting Dr. Leedy's opinion regarding Petitioner's Residual Functional Capacity, and that this provided "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Morgan,* 169 F.3d at 600 (9th Cir. 1999).

**C.    Vocational Expert**

Finally, Petitioner argues that the ALJ failed to present a hypothetical to the vocational expert that reflected all of Petitioner's impairments, including any limitations due to Petitioner's mental impairments.  If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The Secretary must show that the claimant can perform other types of substantial, gainful work that exists in the national economy; specific reference should be made to realistic job opportunities. *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir.1982). "Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant····"

**Memorandum Decision and Order - Page 17**

*Embrey*, 849 F.2d at 422 (emphasis in original) (citations omitted). The testimony of a vocational expert "is valuable only to the extent that it is supported by medical evidence." *Sample*, 694 F.2d at 644. The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.  Specifically, Petitioner argues that the hypothetical question posed to the vocational expert "was void of the most important mental limitation identified by petitioner, that is his difficulty in accepting instructions and responding appropriately to criticism from supervisors," which is a significant vocational barrier and, according to Petitioner, such a barrier would preclude all employment.  (Ptr's Brief, p. 8).

The Court disagrees.  The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Martinez,* 807 F.2d at 773. Rather, the ALJ is "free to accept or reject these restrictions ⋯ as long as they are supported by substantial evidence." *Id.* at 774. This is true even where there is conflicting medical evidence. *Id.*. The limitation of evidence in a hypothetical question is objectionable "only if the assumed facts could not be supported by the record." *Sample*, 694 F.2d at 644; *see also Embrey*, 849 F.2d at 422 (assumptions in hypothetical must be supported by the record);*Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir.1986)(same).  Dr. Renfro only found Petitioner "moderately" limited in his ability to accept instructions and respond appropriately to criticism from supervisors.  There was absolutely no evidence in the record suggesting that Petitioner would be absolutely precluded from all employment for this reason.  In fact, Petitioner continued to assist in managing the trailer park and perform security patrols at night.  In addition, Petitioner had taken steps to solicit employment from attorneys at the courthouse and indicated a desire to become a

**Memorandum Decision and Order - Page 18**

reserve deputy sheriff.   This suggests Petitioner did not view himself as absolutely precluded from all types of employment because of a difficulty accepting instructions (from attorneys) or criticism.  Furthermore, the Vocational Expert found Petitioner could do his past work in security and identified tens of thousands of other representative jobs Petitioner could perform locally and nationally, thereby meeting the Commissioner's burden at step five.

**V.**

**Conclusion.**

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is affirmed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court hereby **ORDERS that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review is dismissed.

DATED: **March 28, 2006**

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 19**